## Lower v. Pine & Cypress Manufacturing Company.

(Decided June 4; 1929.)

TYE, SILER, GILLIS & SILER for appellant.

B. B. SNYDER and STEPHENS & STEELY for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

I. B. Lower was the sole owner of the Morehead Lumber & Coal Company. He was also engaged in selling lumber on commission for the Pine & Cypress Manufacturing Company. The Morehead Lumber & Coal Company purchased from the Pine & Cypress Manufacturing Company a quantity of lumber for which it executed certain notes that were discounted at various banks. When the notes became due they were not paid by Lower. Thereupon the Pine & Cypress Manufacturing Company paid the notes by checks issued to the Morehead Lumber & Coal Company. The checks were then charged against Lower's commissions.

This action was brought against Lower by the Pine & Cypress Company to recover the indebtedness represented by the notes and checks. Lower denied the indebtedness and asserted a counterclaim for commissions far in excess of the indebtedness. In its reply the company pleaded that, under Lower's contract of employment, he was to receive a commission of 40 per cent. of the profits on sales made by him, and was also to share in the losses to the same extent, and that his share of the losses greatly exceeded his share of the profits. To this pleading a rejoinder was filed. On the same day the company filed an amended petition in which it sought to recover the excess of Lower's share of the losses over his share of the profits. Afterwards a sur-rejoinder was filed. The court then transferred the case to the equity docket, but submitted to a jury the question whether Lower was to share in the losses as well as the profits. The jury answered this question in the affirmative, and the court then entered judgment in favor of the company for the amount of the indebtedness represented by the

checks. Lower appeals, and the company prosecutes a cross-appeal.

There can be no doubt that the petition states a cause of action. It shows that Lower was doing business under the name of Morehead Lumber & Coal Company; that he purchased certain quantities of lumber for which he executed his notes; that these notes were discounted at various banks; that they were not paid by Lower at maturity, but were paid by the company by checks issued to the Morehead Lumber & Coal Company and indorsed by it. If all this be true, it necessarily follows that the lumber purchased by Lower was never paid for, and that the company is entitled to recover the purchase price first represented by the notes and then by the checks given to take up the notes.

The further point is made that the company was a mere volunteer in issuing its checks to take up the notes. The notes were payable to the company and were discounted by it and bore its indorsement. In the circumstances it was no stranger to the transaction. It was liable on the notes, and had a perfect right to pay them for its own protection.

On the issue as to the terms of the contract Lower testified that he was to have 40 per cent. of the profits, but was not to stand 40 per cent. of the losses unless he deliberately sold lumber at less than it cost to deliver it. On the other hand, W. L. Adams, president of the Pine & Cypress Manufacturing Company, who made the contract with Lower, testified that Lower was to participate in the losses the same as the profits. There is also in evidence a letter written by Lower to Mr. Adams in which he said: "I think I have a darn sight more at stake than they have at Birmingham and better able to judge as well. Do you suppose I am dam fool enough to sell anybody down here that is not going good and can get money when I told you I would stand my proportion of the losses." Though it be true that the verdict of the jury was only advisory, yet, as it is supported by the weight of the evidence, and was affirmed by the chancellor, no reason appears why its finding should be set aside. It is true that a statement sent to Lower showed that, after charging his account with the checks given to take up the Morehead Lumber & Coal Company notes, there was a large balance in his favor. At that time,

however, the losses had not been incurred. The principal losses grew out of the subsequent depression in Florida. It may be that some of these losses are not properly chargeable to Lower. However, a careful reading of the record convinces us that there were losses properly chargeable to him, and in the adjustment of many of which he participated, sufficient to offset any claim he may have for commissions over and above the amount of the judgment rendered in this action. Further than that we cannot go with reasonable certainty.

Judgment affirmed both on the original and cross appeals.